1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ELIESA RENE BROWN,                    No.  2:21-cv-01045-DAD-AC

12            Plaintiff,

13        v.                               ORDER GRANTING THE BIC
                                           DEFENDANTS' MOTION TO DISMISS
14   COUNTY OF SOLANO, et al.,             AND GRANTING DEFENDANT SDI'S
                                           MOTION TO DISMISS
15            Defendants.
                                           (Doc. Nos. 24, 35)
16

17        This matter is before the court on the motion to dismiss filed by defendants Robinson Yu,

18   Cynthia Tan, and Bay Imaging Consultants ("BIC") (collectively, the "BIC defendants") on

19   September 19, 2022, and the motion to dismiss filed by defendant Solano Diagnostic Imaging

20   ("SDI") on October 17, 2022.  (Doc. Nos. 24, 35.)  The pending motions were taken under

21   submission on November 11, 2022.  (Doc. No. 40.)  For the reasons explained below, the court

22   will grant both motions to dismiss.

23                                BACKGROUND

24        On July 29, 2022, plaintiff Eliesa Rene Brown filed her operative first amended complaint

25   ("FAC") alleging claims of medical negligence and race discrimination against defendants

26   /////

27   /////

28   /////

                                        1

County of Solano, Sharon L. Collins, Christine L. Vetter, SDI, and the BIC defendants.[1]  (Doc. No. 18.)  In her FAC, plaintiff alleges as follows.

Plaintiff, a black woman, received negligent and racial discriminatory healthcare services from Fairfield Family Health Services (the "clinic"), a family healthcare clinic, from approximately 2015 through 2020.  (*Id.* at ¶¶ 2, 13–26.)  The clinic is "owned, operated, controlled, managed, funded, and supervised" by defendant County of Solano and is where plaintiff "received all of the healthcare treatment at issue in" the FAC.  (*Id.* at ¶ 2.)  Plaintiff was seen by "defendants" at the clinic on three occasions in late December 2018 and early January 2019—first, for complaints of shortness of breath and re-evaluation of a cyst; second, for shortness of breath and ear pain; and third, for shortness of breath and ear pain with a suspected blockage.  (*Id.* at ¶¶ 14–16.)  On each visit, plaintiff alleges that she did not receive any medical treatment in response to her complaint of shortness of breath.  (*Id.*)  After plaintiff's three visits, defendant Collins, a nurse practitioner, stated in a letter dated January 10, 2019 that she would not be referring plaintiff to "an ENT specialist because she did not see an issue with the plaintiff's ear."  (*Id.* at ¶ 17.)  In addition, defendant Collins "refused to refer plaintiff for a CT exam, chest x-ray or to a pulmonologist" in response to plaintiff's shortness of breath complaint, which plaintiff alleges "was completely ignored."  (*Id.* at ¶ 17.)

Six months later, on or about July 8, 2019, plaintiff was seen again at the clinic for a complaint of shortness of breath and a follow-up for her ear pain.  (*Id.* at ¶ 18.)  At this visit, defendant Collins allegedly offered no treatment and no referral of plaintiff to a pulmonologist and denied plaintiff's request to have a CT scan performed in connection with her complaint of shortness of breath.  (*Id.* at ¶ 18.)  Plaintiff did receive other lab tests, which indicated that she suffered from tachycardia, but plaintiff did not receive those test results until March 2020 when

---

[1]  Plaintiff has not filed a proof of service on the docket as to any named defendant.  *See* Fed. R. Civ. P. 4(*l*)(1) ("Unless service is waived, proof of service must be made to the court."). Although attorneys have appeared in this action on behalf of defendants County of Solano, Collins, SDI, and the BIC defendants, no attorney has appeared on behalf of named defendant Christine L. Vetter.  Accordingly, because more than 90 days have passed since the FAC was filed and no proof of service has been filed with the court, plaintiff will be ordered to show cause why this action should not be dismissed as to defendant Vetter.  Fed. R. Civ. P. 4(m).

1    she requested copies of her medical records.  (*Id.* at ¶ 19.)

2           On or about July 30, 2019, plaintiff underwent a pulmonary function test at the clinic.  (*Id.*

3    at ¶ 20.)  However, the results of that test were never explained or reviewed with plaintiff, nor

4    was plaintiff's pulse oxygen reading of 83%, which was recorded during this July 30, 2019

5    encounter, shown or explained to plaintiff.  (*Id.*)  Plaintiff also was not provided any further

6    treatment, or told to schedule a follow-up visit, or to come back for further evaluation or

7    treatment.  (*Id.*)  However, on September 20, 2019, plaintiff was advised to return for a second

8    pulmonary function test, which was performed on September 24, 2019.  (*Id.* at ¶ 21.)  The results

9    of that test were also not explained to plaintiff.  (*Id.*)  Unbeknownst to plaintiff at that time, the

10   second pulmonary function test "showed an obstruction and severe restrictive lung defect

11   suggestive of emphysema and a severe decrease in capacity of the lungs."  (*Id.*)

12          On October 13, 2019, plaintiff was rushed by ambulance to a hospital where she was later

13   admitted "with a diagnosis of acute exasperation [chronic obstructive pulmonary disease] with

14   asthma and chronic respiratory failure with hypoxia."  (*Id.* at ¶ 22.)

15          In February 2020, plaintiff requested copies of her medical records from the clinic, and

16   upon receiving and reviewing those records in March 2020, plaintiff "learned for the first time

17   that previous diagnostic testing showed lung defects that [were] never explained or reviewed with

18   her by any of the defendants."  (*Id.* at ¶ 23.)

19          In addition, and most relevant to resolution of the pending motions, plaintiff alleges that

20   defendants Tan, Vetter, and Yu, radiologists employed by defendants Bay Imaging Consultants

21   and Solano Diagnostics Imaging, "misread plaintiff's chest x-rays and a CT scan resulting in a

22   lack of timely treatment for the plaintiff for her chronic obstructive pulmonary disease and

23   emphysema."  (*Id.* at ¶ 13.)  "Plaintiff only discovered in March 2022, that these radiologists

24   misread Plaintiff's chest x-rays in 2015, 2016, 2017, and 2019 leading to a misdiagnosis and a

25   lack of treatment."  (*Id.*)  Plaintiff also alleges that it was not until early May 2022 that she

26   discovered the correct name of the employers of defendants Tan, Vetter, and Yu.  (*Id.*)

27   /////

28   /////

3

1        Based on the above allegations, plaintiff asserts the following two claims in her FAC:  (1)

2    medical negligence brought against all defendants; and (2) racial discrimination in violation of the

3    Affordable Care Act § 1557, Title VI of the Civil Rights Act of 1964, and "related California

4    Acts providing the same protections to minorities" brought against defendants County of Solano

5    and Collins.  (*Id.* at ¶¶ 27–35.)

6        On September 19, 2022, the BIC defendants filed a motion to dismiss supported by the

7    declaration of attorney David A. Depolo and accompanying exhibits.[2]  (Doc. Nos. 24, 25.)  On

8    October 17, 2022, defendant SDI filed its own motion to dismiss.  (Doc. No. 35.)  On November

9    4, 2022, plaintiff filed separate oppositions to each of the pending motions to dismiss.  (Doc. Nos.

10    38, 39.)  On November 10, 2022, the BIC defendants filed their reply, and on November 14,

11    2022, defendant SDI filed its reply.[3]  (Doc. Nos. 41, 42.)

12        Prior to the July 29, 2022 filing of her FAC in this court, plaintiff had initiated this action

13    by filing her original complaint in Solano County Superior Court on March 15, 2021.  (Doc. No.

14    1.)  Defendants County of Solano and Collins removed the action to this federal court on June 14,

15    2021.  (Doc. No. 1.)  The BIC defendants and defendants SDI and Vetter were not named as

16    defendants in plaintiff's original complaint, but were added as defendants when plaintiff filed her

17    FAC.  (*Id.*; Doc. No. 18.)  In addition, before plaintiff filed her original complaint in state court,

18    she filed an administrative claim for damages with the County of Solano on August 17, 2020,

19    which was rejected by the county on September 21, 2020.  (Doc. No. 18 at ¶¶ 25–26.)

20    /////

21    /////

22    /////

23    _____

24    [2]  In attorney Depolo's declaration he includes copies of imaging reports prepared by defendants
      Tan and Yu that he contends are referenced in plaintiff's FAC.  (Doc. No. 26 at ¶¶ 5–7.)  Because

25    the court concludes that resolution of the BIC defendants' motion to dismiss does not depend on
      these imaging reports, the court will exercise its discretion not to incorporate them into plaintiff's

26    FAC.  *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012) ("[T]he
      district court may, but is not required to incorporate documents by reference.").

27
      [3]  On August 1, 2022, defendants County of Solano and Collins filed answers to the FAC.  (Doc.

28    Nos. 20, 21.)

1          **LEGAL STANDARD**

2   **A.     Rule 12(b)(6) – Failure to State a Claim**

3          The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

4   sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

5   1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

6   sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

7   F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

8   relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

9   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

10  the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.

11  Iqbal*, 556 U.S. 662, 678 (2009).

12         In determining whether a complaint states a claim on which relief may be granted, the

13  court accepts as true the allegations in the complaint and construes the allegations in the light

14  most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

15  the court need not assume the truth of legal conclusions cast in the form of factual allegations.

16  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not

17  require detailed factual allegations, "it demands more than an unadorned, the-defendant-

18  unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

19  mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

20  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements

21  of a cause of action, supported by mere conclusory statements, do not suffice.").  It is

22  inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

23  defendants have violated the . . . laws in ways that have not been alleged."  *Associated Gen.

24  Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

25         In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider

26  material that is properly submitted as part of the complaint, documents that are not physically

27  attached to the complaint if their authenticity is not contested and the plaintiffs' complaint

28  necessarily relies on them, and matters of public record.  *Lee v. City of Los Angeles*, 250 F.3d.

1 | 668, 688–689 (9th Cir. 2001).

2 |      Finally, "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by

3 | the applicable statute of limitations only when the running of the statute is apparent on the face of

4 | the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th

5 | Cir. 2010).  "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff

6 | can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc.*

7 | *v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995).

8 | **B.       Rule 12(b)(1) – Lack of Subject Matter Jurisdiction**

9 |      "Federal courts are courts of limited jurisdiction and are presumptively without

10 | jurisdiction over civil actions." *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav.*

11 | *Program*, 443 F. Supp. 3d 1152, 1156 (E.D. Cal. 2020) (citing *Kokkonen v. Guardian Life Ins.*

12 | *Co.,* 511 U.S. 375, 377 (1994)), *aff'd*, 997 F.3d 848 (9th Cir. 2021).  Federal courts "possess only

13 | that power authorized by Constitution and statute, which is not to be expanded by judicial

14 | decree." *Kokkonen*, 511 U.S. at 377 (internal citations omitted).  Subject matter jurisdiction is

15 | required; it cannot be forfeited or waived. *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at

16 | 1156.  Indeed, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the

17 | court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

18 |      Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may

19 | "challenge a federal court's jurisdiction over the subject matter of the complaint." *Nat'l Photo*

20 | *Grp., LLC v. Allvoices, Inc.*, No. 3:13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24,

21 | 2014).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the

22 | challenger asserts that the allegations contained in a complaint are insufficient on their face to

23 | invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)

24 | (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  A party making a facial attack does

25 | not submit supporting evidence with the motion because jurisdiction is challenged based solely on

26 | the pleadings. *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156; *see also Diva*

27 | *Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1084 (N.D. Cal. 2019) ("[C]ourts do

28 | not consider evidence outside the pleadings when deciding a facial attack.") (citation omitted).

Important for purposes of resolving defendant SDI's pending motion to dismiss, it has been recognized that "[t]he district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).[4] However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Below, the court will address the two pending motions to dismiss separately, beginning with the motion brought on behalf of the BIC defendants.

## ANALYSIS

### A.   The BIC Defendants' Motion to Dismiss

In their pending motion, the BIC defendants move to dismiss plaintiff's FAC under Rule 12(b)(6). Specifically, they contend that plaintiff's medical negligence claim brought against them for allegedly misreading chest x-rays and a CT scan in 2015, 2016, 2017, and 2019, resulting in a misdiagnosis and lack of timely medical treatment for plaintiff's chronic obstructive pulmonary disease and emphysema, is barred by the applicable statute of limitations. (Doc. No. 24 at 7.)

Because the BIC defendants, radiologists and their vicariously liable employer, are health care providers being sued for professional negligence, California Code of Civil Procedure § 340.5 provides the applicable statute of limitations.[5] *See Arnett v. Walgreen Co.*, No. 1:13-cv-02066-LJO, 2015 WL 224768, at *2 (E.D. Cal. Jan. 15, 2015), *aff'd*, 670 F. App'x 581 (9th Cir. 2016). /////

---

[4] Here, defendant SDI's motion to dismiss, in part, presents a facial attack under Rule 12(b)(1) because it does not rely on materials outside of the FAC. (*See* Doc. No. 35 at 5–6.)

[5] The parties do not dispute that the BIC defendants are healthcare providers for purposes of § 340.5. (*See* Doc. Nos. 24 at 7; 38 at 2, 4); *see also Lathrop v. HealthCare Partners Med. Grp.*, 114 Cal. App. 4th 1412, 1416 (2004) (finding that although a medical group did not constitute a healthcare provider for purposes of California's Medical Injury Compensation Reform Act ("MICRA") the medical group employer was treated as a healthcare provider when it was found vicariously liable for the negligent acts of its physician employees).

1    Section 340.5 provides that "[i]n an action for injury or death against a health care

2    provider based upon such person's alleged professional negligence, the time for the

3    commencement of action shall be three years after the date of injury or one year after the plaintiff

4    discovers, or through the use of reasonable diligence should have discovered, the injury,

5    whichever occurs first."  Cal. Civ. Proc. Code § 340.5.  This statute "presents two time bars

6    within which a plaintiff claiming medical malpractice must file a complaint:  within one year after

7    said plaintiff discovers, or should have discovered, the injury and within three years after the

8    injury, unless one of the three enumerated exceptions applies."[6]  *Steingart v. White*, 198 Cal. App.

9    3d 406, 412 (1988); *see also Drexler v. Petersen*, 4 Cal. App. 5th 1181, 1189 (2016) ("A plaintiff

10   in a medical malpractice action must satisfy the requirements of both the one-year and the three-

11   year limitations periods.").  Although § 340.5 provides that the plaintiff's "injury" commences

12   both its three-year and one-year limitations period, the one-year limitations period "does not

13   begin to run until the plaintiff discovers both his or her injury and its negligent cause."  *Drexler*, 4

14   Cal. App. 5th at 1189 (citing *Gutierrez v. Mofid*, 39 Cal. 3d 892, 896 (1985) ("[T]he term

15   'injury,' as used in section 340.5, means both 'a person's physical condition *and* its "negligent

16   cause."'")).

17        "'When a plaintiff brings a malpractice action based on the defendant's failure to diagnose

18   . . . a latent, progressive condition, identification of the "injury" is more difficult' than in the

19   common case of a health care provider performing a procedure that causes injury."  *Filosa v.

20   Alagappan*, 59 Cal. App. 5th 772, 779 (2020) (quoting *Drexler*, 4 Cal. App. 5th at 1192).  The

21   applicable standard where a plaintiff alleges a failure to diagnose a progressive condition is that a

22   plaintiff "discover[s] the injury when the undiagnosed condition develops into a more serious

23

---

24   [6] Section 340.5 provides that "[i]n no event shall the time for commencement of legal action
     exceed three years unless tolled for any of the following:  (1) upon proof of fraud, (2) intentional
25   concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic
     purpose or effect, in the person of the injured person."  Cal. Civ. Proc. Code § 340.5.  Although
26   plaintiff briefly mentions in her opposition brief that there should be tolling of this statute of
     limitations in her case for intentional concealment (Doc. No. 38 at 6), she does not elaborate on
27   that conclusory assertion, nor are there any facts alleged in the FAC that appear to raise the issue
     of tolling due to intentional concealment.
28

condition . . . .  With the worsening of the plaintiff's condition, or an increase in or appearance of significant new symptoms, the plaintiff with a preexisting condition either actually (subjectively) discovers, or reasonably (objectively) should be aware of, the physical manifestation of his or her injury.'"  *Id.* (quoting *Drexler*, 4 Cal. App. 5th at 1194).  Put another way, "[i]njury from the failure to diagnose a latent, progressive condition occurs 'when the undiagnosed condition develops into a more serious condition,' and that more serious condition is made manifest by an appreciable increase or alteration in symptoms."  *Id.* at 781 (citation omitted).

The court also notes it has been recognized that "[t]he question of 'when a plaintiff discovers that a preexisting condition has developed into a more serious condition is often a factual issue.'"  *Filosa*, 59 Cal. App. 5th at 779 (quoting *Drexler*, 4 Cal. App. 5th at 1195); *see also Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 810 (2005) ("Resolution of the statute of limitations issue is normally a question of fact.").

      1.      Whether § 340.5's Three-Year Limitations Period Bars Plaintiff's Claim

In their pending motion, the BIC defendants argue that § 340.5's three-year statute of limitations bars all claims stemming from "the radiology reports prior to 2019."  (Doc. No. 24 at 10.)  In this regard, the BIC defendants contend, "[t]here can be no dispute that 'appreciable harm' manifested in this case no later than December 31, 2018 when . . . [plaintiff] complained of shortness of breath when seeking medical care at the Fairfield Family Health Services clinic."  (*Id.* at 11.)  However, plaintiff merely alleges in her FAC that she reported shortness of breath on December 31, 2018, as she also did on January 2 and 4, 2019.  (Doc. No. 18 at ¶¶ 14–19.)  "[T]here was no immediate 'damaging effect' apparent" on December 31, 2018, or the other days when plaintiff reported shortness of breath, that plausibly indicate that an injury occurred based on the allegations in plaintiff's FAC.  *See Filosa*, 59 Cal. App. 5th at 782 (citation omitted).  By contrast, and as plaintiff persuasively argues in her opposition, plaintiff's shortness of breath complaints manifested an injury when she was hospitalized and "diagnosed with acute exasperation COPD with asthma and chronic respiratory failure with hypoxia" on October 13, 2019.  (Doc. Nos. 38 at 5; 18 at ¶ 22.)  In fact, in their reply, the BIC defendants appear to abandon their argument that plaintiff's claim is barred by the three-year limitations period and to

agree that October 13, 2019 is the date plaintiff's underlying condition first manifested appreciable harm.  (*See* Doc. No. 41-1 at 8–11.)  Accordingly, the court finds that October 13, 2019 was the date of injury for purposes of § 340.5 because the FAC plausibly suggests that is the date when plaintiff's prior complaints of shortness of breath revealed a more serious condition that manifested into a hospitalization and an eventual diagnosis.  Because plaintiff's original complaint and FAC were both filed before October 13, 2022 plaintiff has adequately alleged her compliance with the three-year limitations period under § 340.5.

        2.      <u>Whether § 340.5's One-Year Limitations Period Bars Plaintiff's Claim</u>

For purposes of § 340.5's one-year limitations period, the court must also determine the date upon which plaintiff has plausibly alleged that she discovered, or reasonably should have discovered, the negligent cause of her October 13, 2019 injury.  *See Filosa*, 59 Cal. App. 5th at 783 ("The one-year period commences when a plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury *and its negligent cause*.") (emphasis added).  "In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his [or her] claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'"  *Fox*, 35 Cal. 4th at 808 (citation omitted).

Here, plaintiff alleges in her FAC that she "only discovered in March 2022, that these radiologists misread [her] chest x-rays in 2015, 2016, 2017, and 2019 leading to a misdiagnosis and a lack of treatment."  (Doc. No. 18 at ¶ 13.)  However, as the BIC defendants point out, plaintiff has not alleged any facts in her FAC explaining the manner of her March 2022 discovery of her injury's negligent cause, or the inability to have made an earlier discovery despite the exercise of reasonable diligence.  (Doc. No. 41-1 at 10); *see Fox*, 35 Cal. 4th at 808.  Plaintiff does explain in her opposition that in January 2022 she met with "a pulmonologist who looked at the chest films and told her that the lungs were not normal 'hyperinflated' lungs" and that she

/////

/////

then "ordered copies of the chest films and learned that the Radiologist Defendants[7] failed to properly interpret her old (2015-1019) [sic] chest films."  (Doc. No. 38 at 5.)  But these facts offered in plaintiff's opposition to the pending motion have not been alleged in her FAC, and thus, cannot be considered by the court in deciding the pending motion to dismiss.  *See Lee*, 250 F.3d at 688.  Thus, the court is left only with the allegation in the FAC that plaintiff "discovered" that the radiologists, including the BIC defendants, misread prior chest x-rays and a CT scan that led to a misdiagnosis, which is a mere legal conclusion that is insufficient to plausibly allege that plaintiff discovered the negligent cause of her injury in March 2022.

There are also other facts alleged in the FAC suggesting that plaintiff had suspicions regarding the healthcare she had received at the clinic years before March 2022.  Specifically, plaintiff alleges that in February 2020 that she "requested copies of her medical records from the [clinic] . . . .  Upon receiving and reviewing her medical records in March 2020, plaintiff learned for the first time that previous diagnostic testing showed lung defects that was never explained or reviewed with her by any of the defendants. . . ."  (Doc. No. 18 at ¶ 23); (*see also id.* at ¶ 28) (alleging that "[i]t was not until March 2020 when plaintiff finally learned the truth about her condition and the fact that her prior test results were kept secret from her").  The BIC defendants argue that these allegations indicate that plaintiff knew or should have known of the negligent cause of her October 13, 2019 injury no later than March 2020.  (Doc. No. 24 at 8.)  The court agrees that plaintiff's alleged diagnosis on October 13, 2019 combined with the allegation that plaintiff requested and reviewed her medical records in February and March 2020 provides the basis for a reasonable inference to be drawn that plaintiff knew, or should have known, that the negligent cause of her injury was connected to the healthcare she received at the clinic, including imaging done by the BIC defendants.  (*See* Doc. No. 18 at ¶¶ 2, 23) (alleging that plaintiff "received all of the healthcare treatment at issue in this [FAC]" at the clinic); *Artal v. Allen*, 111 Cal. App. 4th 273, 279 (2003) ("[W]hen the patient's 'reasonably founded suspicions [have been aroused],' and she has actually 'become alerted to the necessity for investigation and pursuit of

---

[7]  In plaintiff's FAC, the "Radiologist Defendants" identified includes the BIC defendants.  (Doc. No. 18 at ¶ 5.)

1    her remedies,' the one-year period for suit begins.") (citation omitted).  Indeed, based on the

2    allegations in plaintiff's FAC, it is implausible that she would have been hospitalized and

3    diagnosed on October 13, 2019, requested and received medical records reflecting evidence of

4    lung defects not previously communicated to her in March 2020, but not have had some reason to

5    investigate the alleged negligent failure to diagnose by the BIC defendants until nearly two and

6    half years later.  *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988) ("A plaintiff need not

7    be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by

8    pretrial discovery.  Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to

9    sue, she must decide whether to file suit or sit on her rights.  So long as a suspicion exists, it is

10   clear that the plaintiff must go find the facts; she cannot wait for the facts to find her."); *see also*

11   *Massey v. Mercy Med. Ctr. Redding*, 180 Cal. App. 4th 690, 699 (2009) (finding "the limitations

12   period begins to run, not when medical records are obtained, but when one suspects, or

13   reasonably should suspect, that he has been injured in some wrongful way").

14          Based on the forgoing allegations on plaintiff's FAC, the court agrees with the BIC

15   defendants that plaintiff failed to comply with § 340.5's one-year limitations period because the

16   FAC was not filed until July 29, 2022.  (Doc. Nos. 24 at 10; 41-1 at 9.)  In opposition, plaintiff

17   argues that the BIC defendants were referenced in the original complaint as Doe defendants and

18   the "same operative facts of medical negligence underlie" both her original complaint and the

19   FAC.  (Doc. No. 38 at 7.)  The BIC defendants counter that the relation back doctrine is not

20   applicable to plaintiff's addition of them as named defendants in the FAC.  (Doc. Nos. 24 at 11;

21   41-1 at 41-1 at 5–6.)  As such, the court must determine whether the addition of the BIC

22   defendants to the FAC relates back to the date this action was commenced, on March 15, 2021.

23          3.      Whether the Addition of the BIC Defendants to the FAC Relates Back to the

24                  Filing of the Original Complaint

25          Under Federal Rule of Civil Procedure 15(c), "[a]n amendment to a pleading relates back

26   to the date of the original pleading when . . . the law that provides the applicable statute of

27   limitations allows relation back."  Fed. R. Civ. P. 15(c)(1)(A).  "Thus, Rule 15(c)(1) incorporates

28   the relation back rules of the law of a state when that state's law provides the applicable statute of

1  limitations and is more lenient." *Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191,

2  1200 (9th Cir. 2014).  In other words, "if an amendment relates back under the state law that

3  provides the applicable statute of limitations, that amendment relates back under Rule 15(c)(1)

4  even if the amendment would not otherwise relate back under the federal rules." *Id.*

5       Under California law, "[t]he general rule is that an amended complaint that adds a new

6  defendant does not relate back to the date of filing the original complaint and the statute of

7  limitations is applied as of the date the amended complaint is filed, not the date the original

8  complaint is filed." *Woo v. Superior Ct.*, 75 Cal. App. 4th 169, 176 (1999).  "A recognized

9  exception to the general rule is the substitution under [California Code of Civil Procedure] section

10  474 of a new defendant for a fictitious Doe defendant named in the original complaint as to whom

11  a cause of action was stated in the original complaint." *Id.*  "If the requirements of section 474

12  are satisfied, the amended complaint substituting a new defendant for a fictitious Doe defendant

13  filed after the statute of limitations has expired is deemed filed as of the date the original

14  complaint was filed." *Id.*; *see also Butler*, 766 F.3d at 1201 ("Under California Civil Procedure

15  Code § 474 . . . California courts have recognized that 'where an amendment does not add a

16  "new" defendant, but simply corrects a misnomer by which an "old" defendant was sued, case

17  law recognizes an exception to the general rule of no relation back.'").

18       It is generally insufficient, however, to merely state that a newly added defendant is one of

19  the "Doe defendants" in the original complaint for purposes of satisfying the requirements of §

20  474.  Rather, § 474 imposes specific requirements:

21       After the statute of limitations has run, the relation-back doctrine
    can save an amended complaint that identifies a fictitiously-named
22       defendant and asserts a cause of action against that defendant only
    if:  (1) the amended complaint is based on the same general state of
23       facts as the original; (2) the original complaint stated a valid cause
    of action against the now-identified defendant; and (3) the plaintiff
24       was 'genuinely ignorant' of the defendant's identity or the facts
    rendering defendant liable when the original complaint was filed.

25

26  *Eghtesad v. State Farm Gen. Ins. Co.*, 51 Cal. App. 5th 406, 415 (2020).  In addition, to add a

27  new claim to an amended complaint, the relation back doctrine "requires that the amended

28  complaint rest on the same general set of facts, involve the same injury, and involve the same

1   'instrumentality' or cause of injury." *Hutcheson v. Superior Ct.*, 74 Cal. App. 5th 932, 940

2   (2022) (citing *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 408–09 (1999)).

3       As an initial matter, under California's general rule, the BIC defendants would not relate

4   back to the original complaint because they are new defendants.  Thus, plaintiff must demonstrate

5   that the BIC defendants fall within § 474's exception.  Moreover, because plaintiff's FAC

6   presented a new theory of medical negligence brought against the BIC defendants, she must also

7   show that her new theory is based on the same general set of facts, involved the same injury, and

8   involved the same cause of that injury as alleged in the original complaint.  Having reviewed

9   plaintiff's two pleadings, the court concludes that plaintiff adequately alleges in her original

10   complaint that she was ignorant of the Doe defendants' true identities but fails to satisfy the

11   remaining requirements for relation back under California law.

12       First, the allegations of plaintiff's FAC regarding the BIC defendants are not based on the

13   same general state of facts as those alleged in her original complaint, nor do the two pleadings

14   involve the same cause of plaintiff's injury.  In her original complaint plaintiff alleged that

15   "defendants . . . were negligent in failing to properly and thoroughly exam [sic], treat, refer, test,

16   and care for the plaintiff concerning her shortness of breath complaint for almost a year 2019–

17   2020" and "failed to provide plaintiff the proper follow-up care for plaintiff following her two

18   pulmonary function tests and failed to refer her for a CT scan or further evaluation by a

19   specialist."  (Doc. No. 1-1 at ¶ 25.)  In contrast, the allegations concerning the BIC defendants in

20   plaintiff's FAC are that they "are radiologists who interpreted Plaintiff's chest x-rays in 2015,

21   2016, 2017 and 2019" and "misread plaintiff's chest x-rays and a CT scan resulting in a lack of

22   timely treatment for the plaintiff for her chronic obstructive pulmonary disease and emphysema."

23   (Doc. No. 18 at ¶¶ 5, 13.)  As the BIC defendants point out in their motion and reply brief, the

24   original complaint brought against defendants County of Solano and Collins alleged that those

25   defendants "refused to refer plaintiff for a CT exam, chest x-ray or to a pulmonologist," (Doc.

26   Nos. 24 at 13; 41-1 at 7; 1-1 at ¶ 14), but in her FAC plaintiff alleges that she *did* undergo a CT

27   scan and chest x-rays and that those test results were misinterpreted by the BIC defendants in

28   2015, 2016, 2017, and 2019.  *See Morris v. Sun Pharma Glob.*, No. 20-cv-10441-PAJ-PR, 2021

1  WL 3914235, at *3 (C.D. Cal. Apr. 22, 2021) (finding that an amended complaint did not relate

2  back to original complaint where the original complaint alleged that plaintiff suffered a

3  debilitating infection due to a contaminated testosterone product he injected into himself and the

4  amended complaint alleged the injury could have been caused by contaminated needles

5  manufactured by a new defendant); *Massey*, 180 Cal. App. 4th at 698 (finding that there was no

6  relation back where the original complaint alleged that a nurse "was negligent for leaving plaintiff

7  unattended on his walker, causing plaintiff to fall" whereas the amended complaint also alleged

8  the same nurse "was negligent because he administered morphine sulfate to plaintiff without a

9  valid prescription and without informed consent, to cover up the fall").  Here, not only are the

10 alleged causes of plaintiff's misdiagnosis and lack of treatment different—the radiologists'

11 alleged failure to properly read x-rays and CT scans versus a nurse practitioner's alleged failure to

12 refer plaintiff to specialists or for diagnostic testing in response to the plaintiff's complaints due

13 to racial discrimination and negligence—but also, they are alleged to have primarily happened at

14 the clinic during completely different years.  Thus, it is difficult to see how the allegations in the

15 original complaint could have notified the BIC defendants of plaintiff's claim.  *See Hutcheson*, 74

16 Cal. App. 5th at 940 ("To determine whether an amended complaint rests on the same general set

17 of facts for purposes of the statute of limitations, the most important consideration is whether the

18 original pleading gave the defendant adequate notice of the claim.").

19      Second, plaintiff's original complaint did not state any claim against the BIC defendants

20 because it did not contain any allegations regarding radiologists or any medical professional's

21 failure to properly interpret CT scans or chest x-rays.  Rather, the crux of plaintiff's original

22 complaint was the failure to properly refer her to receive such tests and a lack of adequate

23 medical care by defendant Collins that was allegedly motivated by racial discrimination.  (*See*

24 Doc. No. 1-1 at ¶¶ 21, 25.)  In other words, the claim against the BIC defendants depends on

25 entirely new factual allegations that were added to the FAC; the original complaint, though it

26 named Does 1–50, did not allege that any Doe defendants were liable for their failure to properly

27 interpret CT scans or chest x-rays.  *See Pac. Coast Refrigeration, Inc. v. Badger*, 52 Cal. App. 3d

28 233, 249 (1975) (explaining that "the lack of charging allegations in the original complaint

1   [regarding the Doe defendants] renders it unavailable to rebut the running of the statutory

2   limitation period").  Thus, plaintiff's original complaint did not state any claim—let alone a

3   viable claim—against the now-named BIC defendants.

4          Thus, the court concludes that the filing of plaintiff's FAC, which brought a medical

5   negligence claims against the BIC defendants, does not relate back to the filing of her original

6   complaint.  Because plaintiff has not alleged facts that plausibly indicate that she knew, or should

7   have known, that the negligent cause of her October 13, 2019 hospitalization and diagnosis—i.e.,

8   the BIC defendants' failure to properly interpret chest x-rays and a CT scan—less than one year

9   before filing the FAC, she has not alleged compliance with the one-year limitations period set

10  forth in § 340.5.

11         Accordingly, the court will grant the BIC defendants' motion to dismiss the medical

12  negligence claim brought against them because it is barred by the applicable statute of

13  limitations.[8]

14  **B.     Defendant SDI's Motion to Dismiss**

15         In defendant SDI's pending motion, it primarily argues that the FAC should be dismissed

16  for lack of jurisdiction under Rule 12(b)(1) because the medical negligence claim asserted against

17  it fails to satisfy the requirement that it stems from the same common nucleus of operative facts

18  as the federal claim providing original jurisdiction.  (Doc. No. 35 at 5–6.)

19         Once a court has original jurisdiction over some of the plaintiff's claims, it may exercise

20  supplemental jurisdiction over additional state-law claims that "are so related to claims in the

21  action within [its] original jurisdiction that they form part of the same case or controversy under

22  Article III of the United States Constitution."  28 U.S.C. § 1367(a).  "A state law claim is part of

23

24  ─────────────────
    [8]  In their respective briefings, the parties do not address whether the addition of the BIC
25  defendants may have been proper under Rule 15(c)(1)(C), the portion of the federal rule outlining
    the requirements for relation back as to newly added defendants.  The court need not conduct this
26  analysis, however, because California's relation back standard is more lenient and thus governs.
    *See Audrey G. v. City of Lafayette*, No. 21-cv-03545-WHO, 2022 WL 16528143, at *7 (N.D. Cal.
27  Oct. 28, 2022) ("District courts in California that have considered amendments involving Doe
    defendants have held that California's relation-back standard is more lenient and therefore
28  governs.") (collecting cases).

the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (citation omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). "Exactly how similar the claims must be is not entirely clear, but most courts hold that § 1367(a) requires only a 'loose factual connection between the claims.'" *Pac. Steel Grp. v. Com. Metals Co.*, 600 F. Supp. 3d 1056, 1079 & n.9 (N.D. Cal. 2022) (collecting cases); *see also Spies v. El Dorado Cnty.*, No. 2:16-cv-02232-WBS-GGH, 2016 WL 7212788, at *2 (E.D. Cal. Dec. 12, 2016) ("Only a loose factual connection to the underlying federal claim is required for supplemental jurisdiction purposes.") (citation omitted); *N. Hosp. Grp., Inc. v. Poynter*, No. 3:22-cv-00012-JMK, 2022 WL 3028037, at *2 (D. Alaska Aug. 1, 2022) (explaining that "[d]istrict courts in the Ninth Circuit have acknowledged that the 28 U.S.C. § 1367(a) standard for supplemental jurisdiction is broader than the standard for compulsory counterclaims," which are those arising out of the same transaction or occurrence as the opposing party's claim). If the state law claim has a loose factual connection with the federal claim, then "the federal court maintains jurisdiction over the state claims and all other parties— even parties not facing an allegation that they violated federal law." *Rhodes v. Placer Cnty.*, No. 2:09-cv-00489-MCE-KJN, 2011 WL 1302240, at *6 (E.D. Cal. Mar. 31, 2011), *report and recommendation adopted*, No. 2:09-cv-00489-MCE-KJN, 2011 WL 1739914 (E.D. Cal. May 4, 2011).

Here, the medical negligence claim brought by plaintiff against defendant SDI does not satisfy the common nucleus of operative facts test. Plaintiff's federal claim alleges that defendants County of Solano and Collins treated her "wrongfully and improperly based upon her race as an African American patient" by "ordering improper testing of plaintiff for drug and venereal disease" without her consent and failing to provide her with timely medical care and delaying her treatment because she was a black patient. (Doc. No. 18 at ¶ 34.) For instance, in 2019, plaintiff alleges that in response to a shortness of breath complaint, defendant Collins did not offer any treatment or referral to a pulmonologist or other appropriate specialist and denied plaintiff's request for a CT scan. (*Id.* at ¶ 18.) Plaintiff further alleges that the "racially motived

1    discrimination of [her] continued throughout 2020 with repeated delays in medication refills and

2    lacking authorizations for much needed treatment." (*Id.* at ¶ 24.)  In contrast, for plaintiff's

3    medical negligence claim brought against defendant SDI, she alleges that radiologists employed

4    by defendant SDI were negligent in their failure to diagnose her chronic obstructive pulmonary

5    disease and emphysema based on their review of chest x-rays and CT scans in 2015, 2016, 2017,

6    and 2019. (*Id.* at ¶ 13.)  Plaintiff does not allege any overlap between these two distinct theories

7    of liability which allegedly occurred at different times and involved different individuals, except

8    for her allegation that she "received all of the healthcare treatment at issue in this complaint"

9    from the clinic. (*Id.* at ¶ 2.)  Moreover, in plaintiff's opposition to defendant SDI's motion to

10   dismiss, she merely asserts that the "same operative facts of medical negligence underlie both

11   causes of action" without citation to any legal authority or further elaboration beyond the

12   allegations of her FAC, (Doc. No. 39 at 4), which falls far short of meeting her burden to

13   establish that this federal court has supplemental jurisdiction over her medical negligence claim,

14   *Kokkonen*, 511 U.S. at 377.

15        Thus, because plaintiff's federal claim brought against defendants County of Solano and

16   Collins and her state law claim brought against defendant SDI involve distinct sets of facts arising

17   from events that happened during different time periods and involved different people, the court

18   concludes that they fail to satisfy the common nucleus of operative facts test. *See Scutt v.*

19   *UnitedHealth Ins. Co.*, No. 21-cv-00323-JAO-RT, 2022 WL 787992, at *9 (D. Haw. Mar. 15,

20   2022) (concluding that the plaintiff's state law claim for medical malpractice concerning gender

21   affirming procedures and surgery did not arise from the same common nucleus of operative facts

22   as plaintiff's Americans with Disability Act claim brought against different defendants

23   concerning allegedly discriminatory communications regarding transportation to the medical

24   facility for the gender affirming procedures); *cf. Spies*, 2016 WL 7212788, at *2 (E.D. Cal. Dec.

25   12, 2016) (finding that the plaintiff's state law medical malpractice claim did arise from a

26   common nucleus of operative facts as plaintiff's 42 U.S.C. § 1983 claims where "[a]ll of the

27   alleged violations of decedent's rights by defendants occurred over less than twenty-four hours

28   while the decedent was in custody" and "the events preceding [plaintiff's] admittance and

1  following his release from [the hospital] [were] all relevant to plaintiffs' federal claims" and

2  medical malpractice claim).

3      Accordingly, defendant SDI's motion to dismiss will be granted in part.[9]

4      **C.      Leave to Amend**

5      Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

6  P. 15(a).  The Ninth Circuit maintains a policy of "extreme liberality generally in favoring

7  amendments to pleadings."  *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).

8  Reasons "such as undue delay, bad faith or dilatory motive . . .  repeated failure to cure

9  deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of

10  leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  A district court "should grant leave

11  to amend even if no request to amend the pleading was made, unless it determines that the

12  pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and Liehe,*

13  *Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).

14      Plaintiff has not requested leave to amend in the event either of the pending motions to

15  dismiss were to be granted.  Nonetheless, in regard to the BIC defendants' motion, it is not

16  unimaginable that plaintiff could allege additional or different facts suggesting the timely

17  discovery of her medical negligence claim brought against the BIC defendants, particularly given

18  that discovery of an action is typically a factual matter.  For instance, in her opposition brief to

19  that motion, plaintiff has presented a partial explanation for the delayed discovery of her claim

20  against the BIC defendants, though the court notes that plaintiff's explanation as stated is

21  insufficient without additional factual allegations.  *Cf. Fox*, 35 Cal. 4th at 808–09 ("In order to

22  adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that,

23  despite diligent investigation of the circumstances of the injury, he or she could not have

24  reasonably discovered facts supporting the cause of action within the applicable statute of

25  _____

26  [9] Defendant SDI's motion also argues that plaintiff has failed to allege any grounds of liability
against defendant SDI in her FAC, and that the FAC improperly includes a prayer seeking

27  attorneys' fees and punitive damages against defendant SDI.  (Doc. No. 35 at 6–7.)  Given the
court's finding that it lacks subject matter jurisdiction over plaintiff's claim brought against

28  defendant SDI, it need not address these other issues raised in the pending motion.

limitations period.").  In addition, plaintiff mentions briefly, and without explanation, that tolling of the applicable statute of limitations due to intentional concealment could be implicated in this action.  Although the court remains somewhat skeptical that plaintiff can allege facts sufficient to show her discovery of her claim against the BIC defendants was delayed past March 2020, the court will nonetheless grant her one opportunity.  *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile.").  However, plaintiff is advised that she should only file a second amended complaint if she has a good faith basis to do so.

As for defendant SDI's motion to dismiss for lack of jurisdiction, the court is even more skeptical that leave to amend is appropriate given the apparent differences in time periods and individuals involved in plaintiff's two claims.  Unlike with the BIC defendants' motion to dismiss, plaintiff has not indicated any additional facts in her opposition to SDI's pending motion that she could demonstrate that her state law claim brought against defendant SDI shares a common nucleus of operative facts with her federal claim brought against defendants County of Solano and Collins.  Thus, because amendment of her claim brought against defendant SDI would clearly appear to be futile, the court will not grant plaintiff leave to amend in that regard. However, of course, this dismissal is without prejudice to plaintiff refiling her claim against defendant SDI in state court.

## CONCLUSION

For the reasons explained above,

1.  The court grants the BIC defendants' motion to dismiss (Doc. No. 24) with leave to amend;

2.  The court grants defendant SDI's motion to dismiss (Doc. No. 35) without leave to amend;

3.  Within seven (7) days of the entry of this order plaintiff is ordered to show cause why this action should not be dismissed as to defendant Christine L. Vetter; and

/////

4.     Within twenty-one (21) days from the date of entry of this order, plaintiff shall file either a second amended complaint, or a notice of her intent not to file a second amended complaint and to proceed on the remaining claims not addressed in this order.

IT IS SO ORDERED.

Dated:   **November 2, 2023**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE