UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIESA RENE BROWN, | No. 2:21-cv-01045-DAD-AC |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS |
| COUNTY OF SOLANO, et al., | (Doc. Nos. 60, 66) |
| Defendants. | |

This matter is before the court on two motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, one filed on behalf of defendants Robinson Yu, Cynthia Tan, and Bay Imaging Consultants ("BIC") (collectively, the "BIC defendants"), (Doc. No. 60), and the other filed by defendant Christine L. Vetter, (Doc. No. 66). The pending motions were taken under submission on January 24, 2024 pursuant to Local Rule 230. (Doc. No. 67.) For the reasons explained below, the court will deny both motions to dismiss.

**BACKGROUND**

On March 15, 2021, plaintiff Eliesa Rene Brown filed a complaint initiating this action against defendants County of Solano, Fairfield Family Health Services, Sharon L. Collins, and

/////

/////

/////

1 Does 1 through 50, inclusive, in the Solano County Superior Court.  (Doc. No. 1-1 at 2.)[1]

2 Defendants County of Solano and Collins removed the action to this federal court on June 14,

3 2021.  (Doc. No. 1.)  Defendant Fairfield Family Health Services was dismissed from this case

4 following the granting of a motion to dismiss plaintiff's original complaint without leave to

5 amend.  (Doc. No. 14.)

6 Defendants Yu, Tan, BIC, and Vetter (the "moving defendants") were not named as

7 defendants in plaintiff's original complaint but were added as defendants in plaintiff's first

8 amended complaint ("FAC").  (Doc. No. 1; Doc. No. 18.)  The BIC defendants previously filed a

9 motion to dismiss plaintiff's FAC, which the court granted with leave to amend.  (Doc. No. 55.)

10 On November 24, 2023, plaintiff filed her operative second amended complaint ("SAC")

11 alleging claims of medical negligence and racial discrimination against defendants County of

12 Solano, Sharon L. Collins, Cynthia Tan, Christine L. Vetter, Robinson Yu, and BIC.  (Doc. No.

13 57.)  In her SAC, plaintiff alleges as follows.

14 Plaintiff, a black woman, received negligent and racial discriminatory healthcare services

15 from Fairfield Family Health Services (the "clinic"), a family healthcare clinic, from

16 approximately 2015 through 2020.  (*Id.* at ¶¶ 1, 13–26.)  The clinic is "owned, operated,

17 controlled, managed, funded, and supervised" by defendant County of Solano and is where

18 plaintiff "received all of the healthcare treatment at issue in" the SAC.  (*Id.* at ¶ 2.)  Plaintiff was

19 seen by defendant Collins, a nurse practitioner, at the clinic on three occasions in late December

20 2018 and early January 2019—first, for complaints of shortness of breath and re-evaluation of a

21 cyst; second, for shortness of breath and ear pain; and third, for shortness of breath and ear pain

---

[1] Before plaintiff filed her original complaint in state court, she filed an administrative claim for damages with the County of Solano on August 17, 2020, which was rejected by the county on September 21, 2020.  (Doc. No. 57 at ¶¶ 24–25.)  Plaintiff claims that her administrative injury claim and rejection letter are attached to her second amended complaint and incorporated by reference.  (*Id.*)  The court observes that the documents are not attached to plaintiff's second amended complaint, but are attached to her first amended complaint (Doc. No. 18 at 12–17). Regardless, because the court concludes that resolution of the pending motions does not depend on these materials, the court will exercise its discretion not to incorporate them into plaintiff's second amended complaint.  *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012) ("[T]he district court may, but is not required to incorporate documents by reference.").

2

with a suspected blockage. (*Id.* at ¶¶ 13–15.) On each visit, plaintiff alleges that she did not receive any medical treatment in response to her complaint of shortness of breath. (*Id.*) After plaintiff's three visits, defendant Collins stated in a letter dated January 10, 2019 that she would not be referring plaintiff to an ENT specialist because she did not see an issue with the plaintiff's ear. (*Id.* at ¶ 16.) In addition, defendant Collins "refused to refer plaintiff for a CT exam, chest x-ray or to a pulmonologist" in response to plaintiff's shortness of breath complaint, which plaintiff alleges "was completely ignored." (*Id.*)

Six months later, on or about July 8, 2019, plaintiff was seen again at the clinic for a complaint of shortness of breath and a follow-up for her ear pain. (*Id.* at ¶ 17.) At this visit, defendant Collins allegedly offered no treatment and no referral of plaintiff to a pulmonologist and denied plaintiff's request to have a CT scan performed in connection with her complaint of shortness of breath. (*Id.*) Plaintiff did receive other lab tests, which indicated that she suffered from tachycardia, but plaintiff did not receive those test results until March 2020 when she requested copies of her medical records. (*Id.* at ¶ 18.)

On or about July 30, 2019, plaintiff underwent a pulmonary function test at the clinic. (*Id.* at ¶ 19.) However, the results of that test were never explained to or reviewed with plaintiff, nor was plaintiff's pulse oxygen reading of 83 percent, which was recorded during this July 30, 2019 clinic visit, shown or explained to plaintiff. (*Id.*) Plaintiff also was not provided any further treatment, or told to schedule a follow-up visit, or instructed to come back for further evaluation or treatment. (*Id.*) However, on September 20, 2019, plaintiff was advised to return for a second pulmonary function test, which was performed on September 24, 2019. (*Id.* at ¶ 20.) The results of that test were also not explained to plaintiff. (*Id.*) Unbeknownst to plaintiff at that time, the second pulmonary function test "showed an obstruction and severe restrictive lung defect suggestive of emphysema and a severe decrease in capacity of the lungs." (*Id.*)

On October 13, 2019, plaintiff was rushed by ambulance to a hospital where she was later admitted "with a diagnosis of acute exasperation [chronic obstructive pulmonary disease] with asthma and chronic respiratory failure with hypoxia." (*Id.* at ¶ 21.)

/////

3

In February 2020, plaintiff requested copies of her medical records from the clinic, and upon receiving and reviewing those records in March 2020, plaintiff "learned for the first time that previous pulmonary function tests showed lung defects that [were] never explained or reviewed with her by the defendants, Sharon L. Collins and the County of Solano." (*Id.* at ¶ 22.) No x-rays or CT scans were included in this production of plaintiff's medical records. (*Id.*)

On July 17, 2020, plaintiff received a telephone call from defendant Collins' supervisor, Anna Mae Gonzalez Smith, who reassigned plaintiff to a new primary care nurse practitioner. (*Id.* at ¶ 23.)

In January 2022, during an examination by a new pulmonologist who took over plaintiff's treatment and care, plaintiff was advised that a review of her prior chest x-rays taken in 2015, 2016, and 2017, and her prior CT scan taken in 2019, showed that plaintiff had "hyperinflated lungs" that were previously misdiagnosed as "normal." (*Id.* at ¶ 26.) In February 2022, plaintiff ordered copies of the prior chest x-rays and CT scan. (*Id.*) In March 2022, plaintiff received these copies and had them reviewed by an independent expert radiologist. (*Id.*) The radiologist determined that the x-rays had been misread and wrongly interpreted by defendants Tan, Vetter, and Yu (the "radiologist defendants"), who were working for defendant BIC at the time. (*Id.*) Plaintiff alleges that at this time in March 2022, she learned that the negligence of the radiologist defendants "resulted in a lack of timely treatment for the plaintiff for her chronic obstructive pulmonary disease and emphysema." (*Id.*) She also did not discover the names of the radiologist defendants until this time. (*Id.*)

Based on the above allegations, plaintiff asserts the following two claims in her SAC: (1) medical negligence brought against all defendants; and (2) racial discrimination in violation of the Affordable Care Act § 1557, Title VI of the Civil Rights Act of 1964, and "related California Acts providing the same protections to minorities" brought against defendants County of Solano and Collins only. (Doc. No. 57 at ¶¶ 27–35.)

On December 11, 2023, defendants Tan, Yu, and BIC jointly filed a motion to dismiss. (Doc. No. 60.) On December 17, 2023, plaintiff filed an opposition, and on December 29, 2023, the BIC defendants filed a reply. (Doc. Nos. 64, 65.) On January 18, 2024, defendant Vetter

4

1  filed her own motion to dismiss.[2]  (Doc. No. 66.)  On February 8, 2024, plaintiff filed an

2  opposition, and on February 20, 2024, defendant Vetter filed a reply thereto.  (Doc. Nos. 68, 69.)

3  The remaining defendants have answered the SAC.  (Doc. Nos. 58, 59.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

---

[2]  In the court's prior order dismissing plaintiff's FAC, the court observed that plaintiff had not filed a proof of service on the docket as to any named defendant and no attorney had appeared on behalf of defendant Vetter.  (Doc. No. 55 at 2.)  Subsequently, plaintiff was ordered to show cause within seven days as to why this action should not be dismissed as to defendant Vetter.  (*Id.* at 20.)  Plaintiff did not comply with this order.  In defendant Vetter's pending motion, she explains that she was only recently served in this matter, for the first time, with the SAC.  (Doc. No. 66 at 3.)  Plaintiff confirms in her opposition that defendant Vetter was finally served on December 8, 2023.  (Doc. No. 68 at 2.)  Plaintiff has also submitted a declaration wherein her attorney describes attempts to locate and serve defendant Vetter at home and at work.  (Doc. No. 69 at 2.)  Accordingly, the court's order to show cause, Doc. No. 55, is hereby discharged, but plaintiff is warned that any future failure to comply with the court's orders and deadlines set therein will not be tolerated.

mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Finally, "[a] claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). "[W]here the issue of limitations requires determination of when a claim begins to accrue, the complaint should be dismissed only if the evidence is so clear that there is no genuine factual issue and the determination can be made as a matter of law." *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 591 (9th Cir. 1990). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995).

**ANALYSIS**

In their pending motion, the BIC defendants move to dismiss plaintiff's SAC under Rule 12(b)(6). (Doc. No. 60 at 2.) Specifically, they contend that plaintiff's medical negligence claim brought against them for allegedly misreading chest x-rays and a CT scan in 2015, 2016, 2017, and 2019, resulting in a misdiagnosis and lack of timely medical treatment for plaintiff's chronic obstructive pulmonary disease and emphysema, is barred by the applicable statute of limitations. (*Id.* at 3.) In her pending motion, defendant Vetter also moves to dismiss plaintiff's SAC under Rule 12(b)(6). (Doc. No. 66 at 3.) She argues that despite not being aware of this litigation at the time of the court's November 2023 ruling, she is identically situated as to the BIC defendants, and plaintiff's medical negligence claim is time-barred as to her as well. (*Id.*)

The defendant bears the burden of showing that the statute of limitations bars a plaintiff's claim. *McLaughlin v. Johnson*, No. 14-cv-00259-CJC-AN, 2014 WL 12585780, at *2 (C.D. Cal.

Apr. 11, 2014). As stated in the court's prior order, because the moving defendants, as radiologists and their vicariously liable employer, are health care providers being sued for professional negligence, California Code of Civil Procedure § 340.5 provides the applicable statute of limitations.[3] *See Arnett v. Walgreen Co.*, No. 1:13-cv-02066-LJO, 2015 WL 224768, at *2 (E.D. Cal. Jan. 15, 2015), *aff'd*, 670 F. App'x 581 (9th Cir. 2016). Section 340.5 provides that "[i]n an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." Cal. Civ. Proc. Code § 340.5. This statute "presents two time bars within which a plaintiff claiming medical malpractice must file a complaint . . . unless one of the three enumerated exceptions applies."[4] *Steingart v. White*, 198 Cal. App. 3d 406, 412 (1988); *see also Drexler v. Petersen*, 4 Cal. App. 5th 1181, 1189 (2016) ("A plaintiff in a medical malpractice action must satisfy the requirements of both the one-year and the three-year limitations periods."). Section 340.5 codifies the discovery rule, which "postpones the running of the statute of limitations until the plaintiff discovers, or has reason to discover the cause of action." *Manion v. Vintage Pharms. LLC*, No. 13-cv-02996 EMC, 2013

---

[3] The parties do not dispute that the moving defendants are healthcare providers for purposes of § 340.5. (*See* Doc. Nos. 60 at 8; 66 at 7–8; 64 at 3; 68 at 2–3); *see also Lathrop v. HealthCare Partners Med. Grp.*, 114 Cal. App. 4th 1412, 1416 (2004) (finding that although a medical group did not constitute a healthcare provider for purposes of California's Medical Injury Compensation Reform Act ("MICRA") the medical group employer was treated as a healthcare provider when it was found vicariously liable for the negligent acts of its physician employees).

[4] Section 340.5 provides that "[i]n no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person." Cal. Civ. Proc. Code § 340.5. Plaintiff briefly mentions in her opposition to the BIC defendants' motion to dismiss her FAC that the statute of limitations in this action should be tolled due to intentional concealment. (Doc. No. 38 at 6.) In its prior order, the court noted that while plaintiff did not elaborate on that conclusory assertion or allege any facts in her FAC in support of tolling on that ground, she would be granted an opportunity to amend her FAC if she had a good faith basis to do so. (Doc. No. 55 at 8, 19.) Plaintiff's SAC contains no factual allegations with respect to intentional concealment, and she does not raise intentional concealment in her oppositions to the pending motions. Accordingly, the court deems any prior argument advanced by plaintiff as to the applicability of the intentional concealment exception to be abandoned. (*See* Doc. No. 57.)

WL 5645159, at *6 (N.D. Cal. Oct. 16, 2013) (citing *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807–08 (2005)).

In its prior order, the court determined that October 13, 2019 was the date of plaintiff's injury for purposes of § 340.5, because the FAC plausibly suggested that that was the date when plaintiff's prior complaints of shortness of breath revealed a more serious condition that manifested into a hospitalization and an eventual diagnosis. (Doc. No. 55 at 10); *see also Filosa v. Alagappan*, 59 Cal. App. 5th 772, 781 (2020) ("Injury from the failure to diagnose a latent, progressive condition occurs 'when the undiagnosed condition develops into a more serious condition,' and that more serious condition is made manifest by an appreciable increase or alteration in symptoms."). Accordingly, the court determined that plaintiff had adequately alleged her compliance with the three-year limitations period under § 340.5, since her FAC was filed before October 13, 2022, on July 29, 2022. (Doc. No. 55 at 10.)

However, the court also found that plaintiff failed to allege facts demonstrating that she complied with § 340.5's one-year limitations period, because her FAC did not allege any facts suggesting that it was filed within one year of her discovering the negligent cause of her October 13, 2019 injury.[5] (*Id*. at 10–16); *see also Filosa*, 59 Cal. App. 5th at 783 ("The one-year period commences when a plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its negligent cause.") Plaintiff's FAC was filed over two years after the date of her injury, and, although she raised arguments in her opposition brief to the previous motion to dismiss about a delay in her discovery of the cause of her injury, she had been silent in her FAC as to any facts supporting a delay between the date of her injury and her discovery of its negligent cause. (Doc. No. 55 at 10–11.) However, because plaintiff had presented a partial, yet still insufficient, explanation for the delayed discovery of her claim in her opposition brief, the court granted plaintiff leave to amend on the issue of her compliance with § 340.5's one-year statute of limitations from the date of her discovery of the injury. (*Id.* at 19–20.)

---

[5] The court's prior order also concluded that the addition of the BIC defendants in plaintiff's FAC did not relate back to her original complaint. (Doc. No. 55 at 12–16.) No new allegations advanced in the SAC change this analysis.

In her SAC, plaintiff now alleges that she did not learn of the negligent cause of her injury until March 2022, when she received copies of her old chest x-rays and a CT scan and had them reviewed by an independent expert radiologist who determined that they were misread and misinterpreted by the moving defendants. (Doc. No. 57 at ¶ 26.) If plaintiff's date of discovery of her injury occurred in March 2022, when she filed her FAC on July 29, 2022, naming the moving defendants for the first time, she acted within the one-year limitations period following her discovery.

In response, the BIC defendants argue that plaintiff's SAC alleges that she had notice of wrongdoing as early as October 2019, more than two years before she filed suit, when she was first diagnosed with two chronic ailments despite having had "normal" imaging. (Doc. No. 60 at 11.) They also argue that according to her own allegations, the imaging that plaintiff received in March 2022 was readily available to her for years. (*Id.*) Defendant Vetter similarly argues that plaintiff has not alleged her inability to have made an earlier discovery of her injury despite her exercise of reasonable diligence. (Doc. No. 66 at 9.)

The one-year limitations period runs when "the plaintiff discovers both his or her injury and its negligent cause." *Drexler*, 4 Cal. App. 5th at 1189 (citing *Gutierrez v. Mofid*, 39 Cal. 3d 892, 896 (1985) ("[T]he term 'injury,' as used in section 340.5, means both 'a person's physical condition *and* its "negligent cause."'")). "[A] potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury." *Fox*, 35 Cal. 4th at 808. A "patient is charged with presumptive knowledge of his negligent injury, and the statute commences to run, once he has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation." *Artal v. Allen*, 111 Cal. App. 4th 273, 279 (2003) (internal citation, quotation marks, and emphasis omitted). "[T]he key question is when [p]laintiff[] '*should have discovered*'" the cause of her injury. *Gutzalenko v. City of Richmond*, No. 22-cv-02130-EMC, 2024 WL 1141689, at *6 (N.D. Cal. Mar. 15, 2024).

In order for a plaintiff to rely on a belated discovery to delay the accrual of her cause of action, she "must specifically plead facts to show (1) the time and manner of discovery *and*

1  (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at
2  808 (citation omitted).  "The reasonableness of a delayed discovery presents a question of law
3  only 'when the evidence establishes beyond dispute that the plaintiff has failed to bring the action
4  within one year after notice of its existence.'" *Timmel v. Moss*, 803 F.2d 519, 522 (9th Cir. 1986)
5  (citing *Graham v. Hansen*, 128 Cal. App. 3d 965, 972 (1982)).

      In plaintiff's SAC, she details the time and manner of her discovery.  She alleges that in
January 2022, she was examined by a new pulmonologist who advised her that a review of her
previous x-rays and CT scan showed that she had hyperinflated lungs that were previously
misdiagnosed as normal. (Doc. No. 57 at ¶ 26.)  She alleges that in February 2022, she ordered
copies of the previous x-rays and CT scan, which she received in March 2022.  (*Id*.)  She also
alleges that in March 2022 she had an independent expert radiologist review those copies, and
this expert determined that the x-rays had been misread.  (*Id*.)  She claims that it was not until
March 2022 that she "finally learned the full truth about her condition."  (*Id*. at ¶ 28.)

      Plaintiff also pleads facts, albeit few, supporting her inability to have made an earlier
discovery despite the exercise of reasonable diligence.  She alleges that in February 2020, just a
few months after the date of her injury, she requested copies of her medical records from the
clinic.  (Doc. No. 57 at ¶ 22.)  When she received the records in March 2020, her x-rays and CT
scans were not included.[6]  (*Id*.)  From the medical records that she received, she learned for the
first time that her previous pulmonary function tests showed lung defects.[7]  (*Id*.)  As noted, in
January 2022, plaintiff was examined by a new pulmonologist who reviewed her old x-rays and
CT scan and advised her that this imaging showed that she had "hyperinflated lungs" that had
been misdiagnosed as "normal."  (*Id*. at ¶ 26.)  Plaintiff alleges that this was a new diagnosis that

---

[6] This allegation was not included in plaintiff's FAC or her previous abovementioned opposition brief.

[7] In plaintiff's FAC, she alleged that when she received her records in March 2020, she learned for the first time that *previous diagnostic testing* showed lung defects.  (Doc. No. 18 at ¶ 23.) Plaintiff has now clarified in her SAC that her discovery at that time was limited to the results of her pulmonary function tests, and not any of the imaging conducted by the moving defendants. (Doc. No. 57 at ¶ 22.)

10

1    she heard for the first time at the January 2022 appointment. (*Id.*) The court finds that
2    considered together, these new allegations support the contention that, despite plaintiff ordering
3    and reviewing her medical records back in 2020, she did not suspect nor discover the negligent
4    cause of her injury by the moving defendants until 2022, when she finally received a new
5    diagnosis of her lung condition.

6    Defendant Vetter argues that plaintiff had the ability to consult with a physician or request
7    available copies of her imaging sooner, implying that she was not diligent in her efforts as
8    required to support a claim of delayed discovery of an injury. (Doc. No. 66 at 6.) However, the
9    court notes that whether plaintiff's actions from 2019 through 2022 amount to reasonable
10   diligence is a question of fact, and is not a question for the court to decide at this stage of the
11   litigation. *Timmel*, 803 F.2d at 521; *accord Nev. Power Co. v. Monsanto Co.*, 955 F.2d 1304,
12   1308 (9th Cir. 1992) ("Where the cause of action was belatedly discovered, the issue whether the
13   plaintiff exercised reasonable diligence is a question of fact."). *See also Sims v. Campbell Soup*
14   *Co.*, No. 18-cv-00668-PSG-SP, 2018 WL 7568640, at *10 (C.D. Cal. Sept. 24, 2018) ("Whether a
15   plaintiff could have conducted an investigation that would have 'reasonably discovered facts
16   supporting the action within the applicable statute of limitations' period is a fact-specific
17   question.") The court cannot conclude at this stage that plaintiff has alleged no facts supporting
18   her claimed inability to have made an earlier discovery of her injury despite the exercise of
19   reasonable diligence. Rather, plaintiff has alleged that she ordered her medical records shortly
20   after her date of injury but did not receive all of those records, and she has also alleged that she
21   received a new diagnosis pertaining to her lung condition in 2022 that was previously unknown to
22   her, after which she finally received those records. *See Darringer v. Intuitive Surgical, Inc.*, No.
23   5:15-cv-00300-RMW, 2015 WL 6735333, at *3 (N.D. Cal. Nov. 4, 2015) (holding that the
24   plaintiff sufficiently asserted the second prong of a delayed discovery claim where he alleged that
25   he "review[ed] his medical records" but there was "no information in [his] records, nor any
26   conversation with healthcare providers that would have given [him] reason to suspect that the
27   robot used during his procedure was defective or could be related to the injuries he sustained");
28   *Crowe v. Gogineni*, No. 2:11-cv-03438-JAM-DAD, 2013 WL 6199141, at *4 (E.D. Cal. Nov. 27,

2013) (finding that the plaintiff had pled sufficient facts, if proven, to show his inability to have made earlier discovery through his allegations that he sent letters to the defendants seeking financial statements but the responses he received omitted certain transactions). *Cf Plumlee v. Pfizer, Inc.*, No. 13-cv-00414-LHK, 2014 WL 4275519, at *9 (N.D. Cal. Aug. 29, 2014), *aff'd*, 664 F. App'x 651 (9th Cir. 2016) (holding that the plaintiff had not adequately pled the delayed discovery rule where "relevant information could have been available to[her], had she looked" but she did not allege that she "took *any* step whatsoever to investigate her injury at the time it occurred").

Accordingly, the court concludes that plaintiff has alleged both requirements of a delayed discovery of her injury. The court acknowledges that in its prior order, it expressed skepticism in this regard. This was because from the facts alleged at that time it appeared "implausible that [plaintiff] would have been hospitalized and diagnosed on October 13, 2019, requested and received medical records reflecting evidence of lung defects not previously communicated to her in March 2020, but not have had some reason to investigate the alleged negligent failure to diagnose by the BIC defendants until nearly two and half years later." (Doc. No. 55 at 12.) However, plaintiff has since added new factual allegations to her SAC regarding the documentation that was not included in the medical records she requested as well as the belated diagnosis of her "hyperinflated lungs" – new allegations which the court finds to be sufficient at this stage of the litigation upon which to invoke the delayed discovery rule. (Doc. No. 57 at ¶¶ 22, 26); *see also Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1219 (N.D. Cal. 2014) (finding that the defendants had not met their burden of demonstrating when the plaintiff should have suspected the wrongful cause of his injuries where the plaintiff had satisfied the pleading requirements of the discovery of injury rule and the plaintiff's allegations could support the inference that he may have reasonably relied on his doctor's original diagnosis of his pain). The court again expresses no opinion on the reasonableness of plaintiff's allegations supporting her delayed discovery of her injury and her diligence with respect to the investigation in that regard, because it is not beyond dispute from the face of the SAC at what point plaintiff ought to be charged with constructive notice for the purposes of determining when her action against the

moving defendants accrued.[8]  *See Morton v. Cnty. of San Diego*, No. 21-cv-01428-MMA-KSC, 2022 WL 1407124, at *7 (S.D. Cal. May 4, 2022) ("While County Defendants' motion raises valid questions about the reasonableness of Plaintiffs' timing and discovery, it is not clear from the face of the Second Amended Complaint that Plaintiffs can prove no set of facts that would establish the timeliness of their claim. . . . Such an issue is better left for resolution at the summary judgment stage.").  Therefore, the court will deny the moving defendants' motions to dismiss plaintiff's SAC as barred by the applicable statute of limitations.

## CONCLUSION

For the reasons explained above,

1. Defendant Bay Imaging Consultant's, Tan's, and Yu's motion to dismiss (Doc. No. 60) is denied;
2. Defendant Vetter's motion to dismiss (Doc. No. 66) is denied; and
3. Within twenty-one (21) days from the date of entry of this order, the parties shall file a joint status report stating their proposed dates for the court's consideration in resetting the case schedule and deadlines.

IT IS SO ORDERED.

Dated:  **July 25, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

---

[8]  Plaintiff argues that her cause of action accrued in March 2022.  (Doc. Nos. 64 at 6–7; 68 at 6.)  The BIC defendants argue that it accrued in October 2019, when plaintiff was diagnosed as suffering from two chronic ailments after requesting CT scans to determine the etiology of her symptoms.  (Doc. No. 60 at 11.)  Defendant Vetter argues that when plaintiff first requested her medical records she was "[p]resumably suspicious of malpractice," suggesting her cause of action accrued in February 2020.  (Doc. No. 66 at 4.)

13